IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CARLA KELLEY | ) | |
|       Plaintiff, | ) | |
| v. | ) | 1:12CV376 |
| DURHAM COUNTY, and | ) | |
| WORTH L. HILL, individually and in | ) | |
| his official capacity, | ) | |
|       Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

BEATY, District Judge.

This matter is before the Court on a Motion to Dismiss [Doc. #7] filed by Defendant Durham County pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Also before the Court is a Second Motion to Dismiss [Doc. #23] filed by Defendant Worth L. Hill, individually and in his official capacity, pursuant to Rules 12(b)(2) and (5) of the Federal Rules of Civil Procedure.[1] For the reasons set forth herein, the Court will grant Defendant Durham County's Motion to Dismiss with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Further, the Court will grant Defendant Worth L. Hill's Motion to Dismiss without prejudice pursuant to Rules 12(b)(2) and (5) of the Federal Rules of Civil Procedure.

I.  FACTUAL BACKGROUND

This case involves claims brought by Plaintiff Carla Kelley ("Plaintiff") against Defendant

---

[1] Also before the Court is a Motion to Dismiss [Doc. #15] filed by the Durham County Sheriff's Office and Worth L. Hill, individually and in his official capacity. However, after this Motion was filed, Plaintiff filed a voluntary dismissal of all claims against the Durham County Sheriff's Office [Doc. #17]. Thereafter, Defendant Worth L. Hill filed his Second Motion to Dismiss [Doc. #23]. Accordingly, the first Motion to Dismiss filed by the Durham County Sheriff's Office and Worth L. Hill [Doc. #15] will be denied as moot. Further, the term "Defendants" throughout this Order is limited to the remaining Defendants, Durham County and Worth L. Hill, individually and in his official capacity.

Durham County and Defendant Worth L. Hill, individually and in his official capacity (collectively "Defendants"), stemming from Plaintiff's employment as a Records Assistant with the Durham County Sheriff's Office. According to the allegations in Plaintiff's Complaint, Plaintiff was hired by the Durham County Sheriff's Office in 1992. In approximately July of 2010, following a three-day suspension with pay, Plaintiff complained and reported through her chain of command that she believed she was being treated differently than a younger, white employee due to her race and/or age. Plaintiff further complained that she was being subjected to racial harassment in an effort to induce her resignation.

Following these complaints, Plaintiff contends that she personally spoke with then Major Paul Martin about her discrimination concerns. Plaintiff contends that Major Martin informed Plaintiff they would meet again to further discuss her issues, but Major Martin failed to schedule a future meeting. Thereafter, on September 24, 2010, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") based on racial harassment and discrimination ("First Charge").[2]

After this filing, Plaintiff contends she was out of work from September 29, 2010 through January 4, 2011 due to "job-related stress associated with the discriminatory treatment." (Pl's. Compl. ¶ XIV). Plaintiff further contends that Defendants became aware of her First Charge during this absence from work.

---

[2] At one point, Plaintiff's Complaint alleges that this charge was filed "[o]n or about September 24, 2010." (Pl's. Compl. ¶ I). However, later in the Complaint, Plaintiff alleges that she filed this charge "on or about August 2010." (Pl's. Compl. ¶ XII). Plaintiff has attached no documents verifying the filing, so the exact date on which the First Charge was filed cannot be verified at this time.

Upon returning to work on January 4, 2011, Plaintiff contends she performed her job satisfactorily and did not receive any reprimands regarding her performance, but was placed on administrative leave by Major Martin without warning or justification on March 18, 2011. Thereafter, on March 30, 2011, Major Martin informed Plaintiff that she was to meet with a detective to discuss her complaints. On April 8, 2011, shortly after meeting with the detective, Plaintiff was given a letter by Major Martin indicating that she was being terminated because the Sheriff's Office had "lost confidence in her ability to conduct her official duties." (Pl's. Compl. ¶ XIX).

Plaintiff contends that those responsible for making decisions about her employment were aware that she had filed the First Charge of discrimination with the EEOC and terminated her employment in retaliation for this filing. After her termination, Plaintiff filed a second charge with the EEOC ("Second Charge") on or about June 21, 2011, on the basis of "retaliation, race, age, and disability discrimination." (Pl's. Compl. ¶ I). Plaintiff received a right to sue letter from the EEOC for her First Charge on January 21, 2012 and for her Second Charge on January 14, 2012.

On April 13, 2012, Plaintiff filed this action, asserting claims of discrimination and retaliation under Title VII of the Civil Rights Acts of 1964, 42 U.S.C. § 1983 and § 1981, and the United States and North Carolina Constitutions. Plaintiff's Complaint alleges a causal connection between the filing of her EEOC charges and the adverse employment actions to which she was subjected, including, but not limited to, her suspension and ultimate termination. Further, Plaintiff's Complaint alleges that Defendants had a "policy, custom, and/or practice"

3

that "amounted to at least deliberate indifference to Plaintiff's constitutional and statutory rights." (Pl's. Compl. ¶ XXVI). In response to Plaintiff's Complaint, Defendant Durham County filed a Motion to Dismiss [Doc. #7] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Following this, Defendant Worth L. Hill, individually and in his official capacity, filed a Second Motion to Dismiss [Doc. #23] pursuant to Rules 12(b)(2) and (5) of the Federal Rules of Civil Procedure. Each of these Motions will now be addressed in turn.

II. DEFENDANT DURHAM COUNTY'S MOTION TO DISMISS

Defendant Durham County filed a Motion to Dismiss [Doc. #7] pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In reviewing a Motion to Dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Fourth Circuit has directed that "we 'take the facts in the light most favorable to the plaintiff,' but 'we need not accept the legal conclusions drawn from the facts,' and 'we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quoting Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

In support of its Motion to Dismiss, Defendant Durham County argues that Durham County does not control Durham County Sheriff's Office and is thus not liable for any employment policies or actions taken by the Sheriff's Office. This argument will be addressed

4

as to each of Plaintiff's claims.

### A. Plaintiff's 42 U.S.C. § 1983 and § 1981 Claims

Plaintiff's Complaint contains allegations that Defendant Durham County denied Plaintiff's First and Fourteenth Amendment rights under the United States Constitution in violation of 42 U.S.C. § 1983 and 42 U.S.C. § 1981. (Pl's Compl. ¶ VI). Under 42 U.S.C. § 1983, counties, like other local government entities, can be sued for violations of constitutional rights. Dotson v. Chester, 937 F.2d 920, 924 (4th Cir. 1991). "The violation, however, must bear some relation to the county's 'policy or custom.'" Id. A county may be liable only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Harter v. Vernon, 953 F. Supp. 685, 692 (M.D.N.C. 1996). In determining whether Durham County is liable for the actions of the Sheriff's Office, the Court must "review how state law allocates power and responsibility." Knight v. Vernon, 214 F.3d 544, 552 (4th Cir. 2000).

"North Carolina law vests the sheriff, not the county, with authority over the personnel decisions of his office." Id. Under North Carolina General Statute § 153A-103, the sheriff is given the "exclusive right to hire, discharge, and supervise the employees in his office." N.C. Gen. Stat. § 153A-103. Further, North Carolina General Statute § 162-24 provides that "[t]he sheriff may not delegate to another person the final responsibility for discharging his official duties." N.C. Gen. Stat. § 162-24. Thus, the sheriff has "final policymaking authority on employment decisions." Harter, 953 F. Supp. at 692.

The Fourth Circuit has recognized that "North Carolina courts interpret this statute to

5

preclude county liability for personnel decisions made by sheriffs." Knight, 214 F.3d at 552. In Knight, the Fourth Circuit affirmed a grant of summary judgment for the defendant county where the plaintiff asserted § 1983 claims after being terminated from her position as a jailer. Id. at 552-53. The court noted that "[b]ecause Sheriff Vernon, and not Rockingham County, had exclusive responsibility for discharging [the plaintiff], the district court properly granted summary judgment for the county on the § 1983 claims." Id. at 553. Similarly, in Sutphin v. Kierney, 2000 WL 33682674 (M.D.N.C. Aug. 22, 2000), a former deputy brought claims against the defendant county, alleging gender-based harassment, discrimination and retaliation under § 1983 and Title VII, as well as claims under the public policy and common law of North Carolina. In dismissing all claims against the defendant county, the court noted that "in North Carolina, an employment action brought by an employee of the Sheriff's Department will not subject the county government to liability." Id. at *2.

In response to Durham County's Motion to Dismiss, Plaintiff argues that Durham County can be liable for the actions of the Sheriff and his employees under certain circumstances. In support of this contention, Plaintiff cites to North Carolina General Statute § 153A-435, which addresses waiver of a county's governmental immunity through the purchase of liability insurance. The statute states that "[a] county may contract to insure itself and any of its officers, agents, or employees against liability for wrongful death or negligent or intentional damage to person or property or against absolute liability for damage to person or property caused by an act or omission of the county or of any of its officers, agents, or employees when acting within the scope of their authority and the course of their employment." N.C. Gen. Stat.

6

§ 153A-435(a). Purchasing this liability insurance will result in a waiver of a county's governmental immunity, allowing "any person . . . sustaining damages as a result of an act or omission of the county or any of its officers, agents, or employees, occurring in the exercise of a governmental function, [to] sue the county for recovery of damages." N.C. Gen. Stat. § 153A-435(b). Because Plaintiff's Complaint alleges that Durham County has purchased a liability insurance policy, Plaintiff argues that Durham County has waived its governmental immunity and can thus be liable for the allegations in Plaintiff's Complaint.

While Plaintiff's contention regarding Durham County's purchase of liability insurance will be taken as true for the purposes of a Rule 12(b)(6) motion, Durham County's argument supporting its Motion to Dismiss does not rest on an assertion of governmental immunity. Instead, Durham County argues that under North Carolina law, the sheriff has final policymaking authority regarding employment decisions, and Durham County is precluded from liability for these decisions even in view of purchasing liability insurance which may otherwise serve as a waiver. In Goodwin v. Furr, 25 F. Supp. 2d 713 (M.D.N.C. 1998), the court recognized that "there is no reason to believe that the legislature, by enacting Section 153A-435, sought to alter the prior law that the county is not liable for the actions of the sheriff." Indeed, the "gratuitous act of providing liability insurance does not give a County any more right to control a sheriff or deputy under North Carolina law." Id. at 715. Thus, Plaintiff's argument regarding Durham County's waiver of immunity does not impute liability on Durham County for employment actions taken by the Sheriff's Office. Instead, because North Carolina law gives the sheriff the "exclusive right to hire, discharge, and supervise" his employees, Durham County

7

is not liable under Plaintiff's § 1983 and § 1981 claims as a matter of law.[3]  Further, to the extent Plaintiff's Complaint alleges violations of the United States Constitution, these claims must also be dismissed, as any alleged constitutional violations are the basis of Plaintiff's § 1983 claims.[4] See Thomas v. Shipka, 818 F.2d 496, 499 (6th Cir. 1987), vacated on other grounds, 488 U.S. 1036 (1989) ("[I]n cases where a plaintiff states a constitutional claim under 42 U.S.C. § 1983, that statute is the exclusive remedy for the alleged constitutional violations.").  Accordingly, Durham County's Motion to Dismiss will be granted as to these claims.

## B. Plaintiff's State Law Claims

Plaintiff's Complaint contains allegations that her termination violated Article I, Section 19 of the North Carolina Constitution.  (Pl's Compl. ¶ VIII).  However, as discussed above, under North Carolina law, the sheriff "exercises autonomy in deciding whom to hire and fire." Harter, 953 F. Supp. at 693; see also N.C. Gen. Stat. § 153A-103.  In Harter, the court dismissed the plaintiff's state law claims, including allegations that the plaintiff was terminated in violation of the North Carolina Constitution, because the plaintiff was an employee of the sheriff and not

---

[3]"[W]hen suit is brought against a state actor, § 1983 is the 'exclusive federal remedy for violation of the rights guaranteed in § 1981.'" Alexander v. City of Greensboro, 762 F. Supp. 2d 764, 781 (M.D.N.C. 2011).  "The requirements of section 1983 must therefore be satisfied for a section 1981 claim to prevail." Id.  Thus, because Plaintiff has failed to state a § 1983 claim against Durham County, Plaintiff's § 1981 claim against Durham County necessarily fails as well.

[4]The extent of the constitutional claims alleged in Plaintiff's Complaint are as follows: "Defendants acted under color of state and local laws by denying the Plaintiff her constitutional right to work in an environment free from discrimination, harassment and retaliation pursuant to and guaranteed by the Fourteenth Amendment to the United States Constitution in violation of 42 USC § 1983.  Further, Defendants acted under color of state and local laws by denying the Plaintiff her constitutional right to freedom of speech pursuant to and guaranteed by the First Amendment to the United States Constitution in violation of 42 USC § 1983." (Pl.'s Compl. ¶ VI).

8

the county under North Carolina law. Id. Thus, for the reasons discussed above with regard to Plaintiff's § 1983 and § 1981 claims, Durham County's Motion to Dismiss Plaintiff's claims under the North Carolina Constitution will be granted. See Sutphin, 2000 WL 33682674, at *2 ("[I]n North Carolina, an employment action brought by an employee of a Sheriff's Department will not subject the county government to liability.").

### C. Plaintiff's Title VII Claims

Plaintiff's remaining claim against Defendant Durham County alleges violations of Title VII of the Civil Rights Act of 1964. (Pl's Compl. ¶ VI). For Plaintiff to prevail on her Title VII claims against Durham County, she must establish that she qualified as an "employee" of Durham County within the meaning of Title VII. See Curl v. Reavis, 740 F.2d 1323, 1327 (4th Cir. 1984). "'A plaintiff's status as an employee under Title VII is a question of federal, rather than state, law.'" Id. (quoting Calderon v. Martin Cnty., 639 F.2d 271, 272 (5th Cir. 1981)). Still, "[s]tate law is relevant to the extent it describes the 'plaintiff's position, including [her] duties and the way [s]he is hired, supervised and fired.'" Spencer v. Byrd, 899 F. Supp. 1439, 1441 (M.D.N.C. 1995) (citing Curl, 740 F.2d at 1327).

As discussed above with regard to Plaintiff's § 1983 and § 1981 claims, "employees of a sheriff's department are under the exclusive control of the sheriff as opposed to the county in which the sheriff is geographically located." Sutphin, 2000 WL 33682674, at *2. Thus, under North Carolina law, the sheriff, not the county, has "authority over the personnel decisions of his office." Knight, 214 F.3d at 552. "Although the county . . . may fix the number of salaried employees within the sheriff's office, the sheriff 'has the exclusive right' under North Carolina

9

General Statute 153A-103 'to hire, discharge, and supervise the employees in his office.'" Id. Because state law dictates that Plaintiff's hiring, supervision, and firing was under the control of the Sheriff, not Durham County, Plaintiff can not be considered an "employee" of Durham County for the purposes of Title VII.

The Court notes that in circumstances not present in this case, certain persons working in the Sheriff's Office may be considered "employees" of the county for Title VII purposes. For example, in Spencer, the plaintiff asserted claims under Title VII after being terminated from her position as a sheriff's deputy. Spencer, 899 F. Supp. at 1440. When considering whether the plaintiff was an "employee" of the County under Title VII, the court noted that in addition to providing the plaintiff's compensation, "the County has the authority to limit the Sheriff to two deputies, and to establish the number of deputies" pursuant to North Carolina General Statute § 153A-103.[5] Id. at 1441. Further, the court recognized that "the County exercises a great deal of control through its ability to fund or to decide not to fund the deputy positions." Id. This "indicum of control" over the position of sheriff's deputy led the court to conclude that the plaintiff was an "employee" of the county for Title VII purposes. Id.

Here, however, Plaintiff worked for the Durham County Sheriff's Office as a Records Assistant. Thus, the analysis in Spencer addressing whether a sheriff's deputy is an employee of a county for the purposes of Title VII is not dispositive. Instead, an inquiry into "'plaintiff's

---

[5]"Each sheriff and register of deeds elected by the people is entitled to at least two deputies who shall be reasonably compensated by the county, provided that the register of deeds justifies to the Board of County Commissioners the necessity of the second deputy." N.C. Gen. Stat. § 153A-103.

10

position, including [her] duties and the way [s]he is hired, supervised and fired,'" as was performed by the court in Spencer, indicates that Plaintiff should not be considered an "employee" of Durham County for the purposes of Title VII. See Spencer, 899 F. Supp. at 1441. North Carolina state statutes do not specifically mention the position of "Records Assistant" or designate a specific number of "Records Assistant" positions. Instead, the Sheriff, not Durham County, has control over all aspects of the position of "Records Assistant." Thus, because Plaintiff was not an "employee" of Durham County for the purposes of Title VII, Durham County's Motion to Dismiss will be granted as to Plaintiff's Title VII claims. Accordingly, Plaintiff's Complaint against Durham County will be dismissed in its entirety.

III. DEFENDANT WORTH L. HILL'S MOTION TO DISMISS

Defendant Worth L. Hill, individually and in his official capacity, filed a Second Motion to Dismiss [Doc. #23] pursuant to Rules 12(b)(2) and (5) of the Federal Rules of Civil Procedure, specifically arguing that the Court lacks personal jurisdiction over Defendant Hill due to insufficient service of process. "Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104, 108 S. Ct. 404, 409, 98 L. Ed. 2d 415 (1987). "The plaintiff bears the burden of establishing that the service of process has been performed in accordance with the requirements of Federal Rule of Civil Procedure 4." McCreary v. Vaughan-Bassett Furniture Co., 412 F. Supp. 2d 535, 537 (M.D.N.C. 2005). While technical noncompliance with Rule 4 will not always mandate dismissal, the Fourth Circuit has recognized that the rules regarding service "are there to be followed, and plain requirements for

11

the means of effecting service of process may not be ignored." Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc., 733 F.2d 1087, 1089 (4th Cir. 1984).

Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, "[i]f a defendant is not served within 120 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m). However, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m).

Here, Plaintiff filed her Complaint on April 13, 2012. On April 18, 2012, she attempted service on Defendant Hill by serving the County Attorney for Durham County (Affidavit of Service [Doc. #5]). On June 14, 2012, in response to this service, Defendant Hill filed his first Motion to Dismiss [Doc. #15] pursuant to Rules 12(b)(2) and (5) of the Federal Rules of Civil Procedure, arguing that the County Attorney is not authorized to receive service on Defendant Hill's behalf. In response, Plaintiff noted within her Opposition Memorandum that "pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, a summons will remain valid and alive for up to 120 days after the complaint is filed . . . [therefore] the summons is still alive and can be re-issued and re-served upon Sheriff Hill." (Pl's Opp. Mem. [Doc. #19], at 4).

However, despite recognizing that the 120 day period for service of process had not yet run, Plaintiff did not effect service on Defendant Hill until August 18, 2012, five days[6] after the

---

[6]In the briefing surrounding Defendant Hill's Second Motion to Dismiss, both parties acknowledge that the second attempted service occurred seven days outside of the 120 day time period. However, the Court notes that since the 120 day time period ended on August 11, 2012, a Saturday, the time period is extended until Monday, August 13, 2012, pursuant to Rule 6(a)(1)(C) of the Federal Rules of Civil Procedure. Thus, the second attempted service occurred

12

expiration of the 120 day time period provided under Rule 4(m). Thus, Plaintiff failed to properly serve her Complaint on Defendant Hill within 120 days as required by Federal Rule of Civil Procedure 4(m).

In addition to failing to effectuate timely service, Plaintiff has also failed to show good cause for her delay in effecting service. "[T]o establish good cause, Plaintiff must show that [she] acted in good faith and demonstrate some form of due diligence in attempting service." Elkins v. Broome, 213 F.R.D. 273, 276 (M.D.N.C. 2003). Here, Plaintiff contends that because Defendant Hill is no longer the Sheriff of Durham County, Plaintiff had to find Defendant Hill's residential address, which caused the delay. However, Defendant Hill was no longer the Sheriff of Durham County at the time Plaintiff originally filed her Complaint, so this known fact cannot create a new service issue sufficient to show good cause. Further, Plaintiff was aware of deficiencies in her first service attempt as early as June of 2012, and it is clear from Plaintiff's response to Defendant Hill's first Motion to Dismiss that she was aware of her ability to reissue the summons within 120 days of filing her Complaint. Despite this recognition, however, Plaintiff waited until August of 2012 to reissue the summons and attempt to reexecute service on Defendant Hill. Plaintiff's unexplained delay does not demonstrate the reasonable and diligent efforts necessary to support good cause. See T & S Rentals v. United States, 164 F.R.D. 422, 425 (N.D.W. Va. 1996)("[T]he plaintiffs [had] not shown 'good cause' within the meaning of Fed. R. Civ. P. 4(m) because they [had] not demonstrated their 'reasonable, diligent efforts

---

five, not seven, days outside of the 120 day time period. Nevertheless, the Court has determined that the service was still untimely.

13

to effect service on defendant.'"). Thus, because Plaintiff failed to effectuate timely service without good cause, Defendant Hill's Second Motion to Dismiss will be granted, and Plaintiff's Complaint will be dismissed without prejudice.[7]

## IV. CONCLUSION

For the reasons stated above, it is hereby ordered that Defendant Durham County's Motion to Dismiss [Doc. #7] is GRANTED and Plaintiff's Complaint against Defendant Durham County is DISMISSED WITH PREJUDICE pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

IT IS FURTHER ORDERED that Defendant Worth L. Hill's Second Motion to Dismiss [Doc. #23] is GRANTED and Plaintiff's Complaint against Worth L. Hill is DISMISSED WITHOUT PREJUDICE pursuant to Rules 12(b)(2) and (5) of the Federal Rules of Civil Procedure.

IT IS FINALLY ORDERED that Defendant Worth L. Hill's joint Motion to Dismiss with former Defendant Durham County Sheriff's Office [Doc. #15] is DENIED as MOOT.

This the 11th day of February, 2013.

                                                United States District Judge

---

[7] The Court notes that Defendant Hill's Second Motion to Dismiss is based upon Plaintiff's failure to effectuate timely service pursuant to Rules 12(b)(2) and (5) of the Federal Rules of Civil Procedure. Therefore, the Court's ruling is limited to the service issues addressed by both Plaintiff and Defendant Hill.